FILED
2017 Mar-31  AM 11:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| MATTHEW HUMPHREY,       ) | |
|                         ) | |
|        Plaintiff,       ) | |
|                         ) | |
| v.                         ) | Case Number: 2:15-cv-02058-JHE |
|                         ) | |
| COMMISSIONER OF SOCIAL    ) | |
| SECURITY ADMINISTRATION,   ) | |
|                         ) | |
|        Defendant.      ) | |

## MEMORANDUM OPINION[1]

Plaintiff Matthew Humphrey ("Humphrey") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability and disability insurance benefits ("DIB"). (Doc. 1). Humphrey timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **REVERSED**, and this action is **REMANDED**.

### I. Factual and Procedural History

Humphrey filed his application for a period of disability and DIB on April 11, 2013, alleging he became unable to work beginning March 8, 2013. (Tr. 169). The Agency initially denied Humphrey's application, and Humphrey requested a hearing where he appeared on August 18, 2014. (Tr. 61-89). After the hearing, the Administrative Law Judge ("ALJ") denied

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 15).

Humphrey's claim on September 23, 2014, finding him not disabled.  (Tr. 91-104).  Humphrey sought review by the Appeals Council, but it declined his request on September 23, 2015. (Tr. 1-4).  On that date, the ALJ's decision became the final decision of the Commissioner.  On November 13, 2014, Humphrey initiated this action.  (*See* doc. 1).

Humphrey was sixty-one years old at the time of the hearing decision.  (Tr. 104, 111).  Humphrey has a high school education, (tr. 323), and past relevant work as a traffic technician and computer operator, (tr. 79-80).  Humphrey alleges he became disabled on March 8, 2013, due to spinal arthritis, stenosis, spondylosis, degenerative disc disease, and migraines with dizziness.  (Tr. 170, 214).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed.  The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence.  "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI").  However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991).  However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;
(2)     whether the claimant has a severe impairment;
(3)     whether the claimant's impairment meets or equals an impairment listed

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

by the [Commissioner];

(4)    whether the claimant can perform his or her past work; and

(5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ noted Humphrey meets the insured status requirements of the Social Security Act through December 31, 2017 (his date last insured or "DLI"), and that Humphrey had not engaged in substantial gainful activity from his alleged onset date of March 8, 2013. (Tr. 96). At Step Two, the ALJ found Humphrey has the following severe impairments: lumbar degenerative disease; severe left L4-5, right L5-S1 foraminal stenosis; left hip bursitis; and chronic headaches. (*Id.*). At Step Three, the ALJ found Humphrey did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 97).

Before proceeding to Step Four, the ALJ determined Humphrey's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. §

4

404.1545(a)(1).  The ALJ determined that Humphrey had the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a), except Humphrey is only able to "occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs but never ladders, ropes or scaffolds; must avoid concentrated exposure to extreme cold, wetness and humidity; must avoid all exposure to dangerous machinery and unprotected heights; must avoid concentrated exposure to vibration; must be allowed to stand and stretch at the work station approximately every 45 minutes as needed while remaining on task; must work in an environment with a 'moderate noise intensity level' or quieter as the Selected Characteristics of Occupations defines that term, which gives examples of light traffic, grocery store, or a department store; is able to work in environments with levels of illumination similar to a typical office setting."  (Tr. 98-102).

At Step Four, the ALJ determined Humphrey is able to perform his past relevant work as a traffic technician.  (Tr. 102).  Although the ALJ found Humphrey is able to perform is past relevant work, resulting in a finding that he is not disable, the ALJ continued to Step Five, and alternatively determined, that based on Humphrey's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy he could perform. (Tr. 102-03).   The ALJ concluded Humphrey has not been under a disability and denied his claim.  (Tr. 104).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the

[Commissioner]." *Id.* (citation omitted).

Humphrey contends the ALJ failed to properly evaluate the credibility of his complaints of pain consistent with the Eleventh Circuit pain standard.[4]  (Doc. 10 at 4-12).  When a claimant attempts to establish disability based on subjective complaints, including pain, he must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of the alleged symptoms or that the medical condition could be reasonably expected to give rise to the alleged symptoms.  *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996-374186.  If the claimant establishes he has an impairment that could reasonably be expected to produce er alleged symptoms, then the intensity and persistence of his alleged symptoms and their effect on her work must be evaluated.  *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of his symptoms, the ALJ considers all evidence, objective and subjective.  *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 364186 at * 4-5.  The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence.  *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 96-7p, 1996 WL 364186 at * 4-8.  If an ALJ discredits a claimant's subjective complaints, "he must articulate explicit and adequate reasons for doing so."  *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219, 1225

---

[4] Regarding the assessment of the credibility of a claimant's statements, SSR 16-3p, effective March 28, 2016, superseded SSR 96-7p, which was in effect when the ALJ issued his decision.  SSR 16-3p eliminates the use of the term "credibility" and instead provides that the ALJ "will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." SSR 16-3p, 2016 WL 1119029, *7 (March 16, 2016).  Because the effective date of SSR 16-3p came *after* the ALJ's decision, the court reviews the case under SSR 96-7p.

(11th Cir. 2002). "[I]f a credibility determination is inadequate, a remand to the agency for further consideration is the proper remedy." *Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011). *See also Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (retreating from *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), based on the prior precedent rule, and remanding to the agency).Humphrey alleges disability as of March 8, 2013, due to chronic moderately severe back pain and migraine headaches. (Tr. 73). At the hearing before the ALJ, Humphrey testified he stopped working in March 2013, because of his symptoms. (*Id.*). According to Humphrey, his pain caused him to leave work or turn around and go home before he arrived at work. (Tr. 73-74). He explained that he was missing as many as two-to-three days a week and had used up all of his sick and vacation time. (Tr. 74). Humphrey testified that, at the time he left work, he was having two-to-three headaches a week. (Tr. 73). He further testified he has to lie down two-to-three hours a day due to his pain. (Tr. 73, 76). Humphrey stated that most of his pain is in his lower back and hips and goes down his legs and even to the bottom of his feet. (Tr. 73). He testified he can sit for forty-five minutes at a time and stand for only three-to-four minutes at a time. (*Id.*). The Vocational Expert ("VE") testified that all work would be precluded if an individual were to miss two or more days of work per month. (Tr. 87).

The ALJ determined Humphrey is capable of a reduced range of sedentary work and found Humphrey's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Humphrey's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 99). In discrediting Humphrey's statements of debilitating back and hip pain, the ALJ states "[Humphrey's] treatment records fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the

claimant were in fact disabled," (tr. 99), and "in terms of back and leg pain, symptoms seemed to worsen after [Humphrey] applied for disability but not to the debilitating degree and symptoms seem to improve with treatment," (tr. 101). This assessment, however, fails to properly consider the entire medical record and instead relies on isolated notations in the record, some incorrectly, to support a negative credibility finding. An ALJ "cannot pick and choose among a doctor's records to support [her] own conclusions." *Chambers v. Astrue*, 671 F. Supp. 2d 1253, 1258 (N.D. Ala. 2009).

### A. Complaints Regarding Back and Hip Pain

Specifically, as to Humphrey's complaints of back and hip pain, the ALJ points to a "March 2013 neurologist appointment" stating that Humphrey "did not mention any back pain. (Tr. 99). Treatment notes from Humphrey's March 2013 appointment with Dr. Riser at Alabama Neurology Associates report that Humphrey "states his headaches have not significantly improved since his sinus surgery but his dizziness has resolved. . . . he retired early from work because of problems with his back and head. He still has fairly significant back and neck pain but not progressive weakness or numbness." (Tr. 721). Furthermore, the medical records indicate this neurologist appointment was a follow-up for chronic headaches and dizziness, (tr. 721); Dr. Riser was not treating Humphrey's back and hip pain.

The ALJ also notes that the "treatment records fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled." (Tr. 99). Humphrey's longstanding history of back pain is well-documented in the record, including significant radiological findings. Humphrey has been treated by Dr. Greg E. Eudy at Brookwood Medical Center since 2005, for what Dr. Eudy diagnosed as osteoarthritis of the L-spine and osteoarthritis in his hands. (Tr. 420-512). Records indicate in 2009, Humphrey received epidural

injections for cervical and lumbar spine pain.  (Tr. 441).  Records from a July 2011 visit reveal Humphrey had received multiple epidural pain blocks to his cervical and lumbar spine, and he had developed intense headaches that at one point were thought to be the result of a spinal fluid leak. (Tr. 426).  By 2013, Humphrey's pain had worsened.  At a June 24, 2013 visit with Dr. Eudy, Humphrey reported that his last several epidural pain blocks did not work and he was having worsening pain in the low back that radiated into this legs with weakness and pain when walking. (Tr. 732).

Dr. Mark Downey at Alabama Orthopedic Specialist also treated Humphrey.  On January 15, 2013, Humphrey presented to Dr. Downey complaining of lower back pain with radiation into the buttocks and down the back of his legs with ambulation.  (Tr. 518).   Humphrey explained he had several epidural injections with minimal, if any, relief from his most recent injection.  (Tr. 518).   Humphrey returned to Dr. Downey on April 15, 2013, and treatment notes indicate Humphrey's back pain was worsening.  (Tr. 513).  Humphrey rated his lower back and hip pain 9 out of 10 and reported no improvement with conservative measures, including over-the-counter NSAIDs and prescription medications.  (Tr. 513).  Humphrey continued to report debilitating pain with no improvement in July 2013 and September 2013.  (Tr. 513, 747).  Humphrey received seven epidural steroid injections over the course of fourteen months.  (Tr. 513, 515, 519, 520, 524, 745, 747, 749).  As of October 2013, Humphrey reported that his pain was worsening over the last six months, at a constant 8 out of 10, which was aggravated by walking and prolonged sitting.  (Tr. 749).

Humphrey underwent surgery on October 24, 2013, consisting of bilateral L3, L4 laminectomies, medial facetectomioes and bilateral foraminotomies and posterolateral arthrodesis L3-L4 using autogenous bone graft.  (R. 754).  Physical therapy notes from November and

December 2013, indicate Humphrey reported some pain relief after surgery, but also reported aggravation with standing and walking.  (Tr. 758-81).  In December 2013, Humphrey reported some relief as to the radiculopathy pain but still suffered from lower back and hip pain.  (Tr. 794). He reported he was unable to walk more than 100 feet.  (*Id.*).  On February 25, 2014, Humphrey received injections for his hip bursitis.  (Tr. 800-01).  In March 2014, Humphrey reported some hip pain relief from the injections, but still reported pain in his lower back.  (Tr. 798).

In May 2014, Humphrey returned to Dr. Downey and reported the same debilitating pain and functional limitations as he did prior to surgery.  (Tr. 818).  On May 13 2014, Humphrey reported worsening of his low back pain and right leg pain, which had not improved with conservative measures.  (*Id.*).  Humphrey received another lumbar epidural injection in May 2014, for what continued to be diagnosed as lumbar degenerative disease; right lumbar radiculopathy and severe left L4-5/right L5-S1 foraminal stenosis.  (*Id.*).

The record also contains objective evidence supporting Humphrey's complaints of pain. An MRI of Humphrey's cervical spine performed on September 19, 2011, documented severe bilateral C4-5 neural foraminal stenosis due to uncovertebral spurs.  (Tr. 534).  A January 15, 2013 MRI of Humphrey's lumbar spine revealed the presence of (1) severe right L5-S1 foraminal stenosis; (2) mild to moderate spinal stenosis at L2-3 with right paracentral disc protrusion; (3) mild spinal stenosis at L3-4; and left lateral spur/disc combination at L4-5.  (R. 517).  An October 8, 2013 MRI of Humphrey's lumbar spine documented moderate multilevel degenerative disc disease, spondylosis, and stenosis.  (Tr. 752).  Based on this MRI and the fact that numerous epidural injections failed to provide relief, Dr. Downey recommended Humphrey consider surgery, (tr. 753), which he underwent later that month.

The ALJ's negative credibility finding regarding Humphrey's complaints of back and hip

pain is not supported by substantial evidence.  Contrary to the ALJ's assertion, Humphrey's complaints of back and hip pain are consistent throughout the longitudinal evidence and supported by objective medical evidence.  As thoroughly discussed above, even after lumbar spine surgery, Humphrey's debilitating pain returned.  Exhibiting normal gait, intact sensation, normal strength, lack of instability, and other functional abilities do not alone support a finding of not disabled.

### B.  Complaints of Chronic Headaches/Migraines

The ALJ also refused to credit Humphrey's complaints of debilitating headaches, finding Humphrey's "treatment records fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled," concluding that "the degree of limitation alleged . . . is simply not supported by the medical evidence" and that "there is no medical explanation to support the . . . allegations of uncontrolled migraines."  (Tr. 100-01).

To the contrary, Humphrey's testimony regarding the frequency and severity of his headaches is supported by the longitudinal medical records.  Humphrey began treatment with Dr. John Riser at Alabama Neurology Associates in December 2011, for chronic headaches.  (Tr. 687). Treatment notes show Humphrey reported significant neck pain and daily headaches throughout 2012, (tr. 693, 709), and, in October 2012, Dr. Riser described Humphrey's headaches as "cerviocogenic headaches" and felt Humphrey was stable from a neurological standpoint. (Tr. 713).  The diagnosis of cerviocogenic headaches is consistent with the MRI of Humphrey's cervical spine performed on September 19, 2011, which showed severe bilateral C4-5 neural foraminal stenosis due to uncovertebral spurs.  (Tr. 534).

In March 2013, Humphrey reported that his headaches had not significantly improved since his sinus surgery, but his dizziness had resolved.  (Tr. 721).  He told Dr. Riser he was looking into early retirement because of his of his "fairly significant back and neck pain" and headaches.  (*Id.*).

The ALJ references a treatment note from October 2, 2013, to support her negative credibility finding. Specifically, the ALJ noted that in October 2013, Humphrey's headaches were noted as "stable" on his current medication." (Tr. 101). Although the ALJ is correct that Dr. Riser used the word "stable," Dr. Riser continued to explain that Humphrey continued to experience headaches up to fifteen days per month and for at least four hours. (Tr. 786). Thus, in this context, "stable" hardly means "under control." To the contrary, because Humphrey continued to have headaches, Dr. Riser referr3ed him for a Botox therapy evaluation. (*Id.*). Treatment notes from February 2014 indicate Humphrey had not received Botox injections because of a problem with his insurance. (Tr. 787). Humphrey ultimately received Botox therapy in March 2014 for his headaches. (Tr. 813). At the time he reported his pain as 8 out of 10 during the headaches, which he said occurred up to fifteen days a month and could last up to twenty-four hours. (*Id.*).

The ALJ's negative credibility finding regarding Humphrey's complaints about his headaches is not supported by substantial evidence. The medical records support Humphrey's testimony regarding the frequency and severity of his headaches. The ALJ's characterization of his headaches as "stable," appears to mischaracterize their severity and the ineffectiveness of medication and other treatment. Furthermore, the ALJ failed to consider the abnormal MRI of Humphrey's cervical spine as objective medical evidence of a basis for his headaches, despite Dr. Riser describing them as "cerviocogenic headaches." On remand, the ALJ should consider the above in light of the VE's testimony that all work would be precluded if an individual were to miss two or more days of work per month. (Tr. 87).

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying

Humphrey's claim for a period of disability and disability insurance benefits is **REVERSED** and this action **REMANDED** for further proceedings consistent with this memorandum opinion.

DONE this 30th day of March, 2017.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE